# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Rex A. Field,<br><br>Debtor(s). | C/A No. 18-06502-JW<br><br>Chapter 13<br><br>**ORDER** |

This matter is before the Court on the Objection to Claim of Wilmington Savings Fund Society, FSB, DBA Christiana Trust, not in its Individual Capacity, But Solely as Owner Trustee for CSMC 2018-RPL6 Trust ("Wilmington SFS"), filed by Rex A. Field ("Debtor") on March 8, 2019. Wilmington SFS filed a Response to the Objection to Claim on April 16, 2019, and an amended proof of claim on May 16, 2019. The Court held a hearing on the Objection to Claim, attended by Debtor, the Chapter 13 Trustee, and counsel for Wilmington SFS. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the Court makes the following findings of fact and conclusions of law:[1]

## FINDINGS OF FACT

1. On October 7, 2005, Debtor and Tracy L. Field purchased property located at 1 Dulamo Bluff Road, Saint Helena Island, South Carolina ("the Property"). To finance this purchase, Debtor and Tracy L. Field executed a promissory note in the amount of $359,000 to E*Trade Mortgage Corporation ("Note"). The Note was secured by a mortgage on the property ("Mortgage") in favor of Mortgage Electronic Registration

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such; and vice versa.

Systems (MERS). The Note and Mortgage both provide that the "Lender" is E*Trade Mortgage Corporation.

2. By assignment dated October 20, 2010 and recorded November 22, 2010, MERS as nominee for E*Trade Mortgage Corporation assigned its interest in the Mortgage to CitiMortgage.

3. On December 13, 2013, Debtor filed his first Chapter 13 bankruptcy case, C/A No. 13-07371, with assistance of bankruptcy counsel. Debtor listed CitiMortgage as a secured creditor with a claim secured by an interest in the Property, but listed the claim as disputed. Debtor voluntarily dismissed the case on February 5, 2014, and thereafter pursued loss mitigation/mortgage modification with CitiMortgage outside of bankruptcy.

4. On August 11, 2014, Debtor and Tracy L. Field entered into a Home Affordable Modification Agreement with CitiMortgage regarding the Mortgage secured by the Property. The Modification Agreement provided for the waiver of all unpaid late charges, reduction of the interest rate on the Note from 4.990% to 2.000% for a five-year period (with interest rate changes occurring thereafter in years 6 (3.000%), 7 (4.000%), and 8 (4.125%)), and a new principal balance of $386,272.11, with $69,267.91 of the new principal balance being deferred such that Debtor was not obligated to pay interest or make monthly payments on that amount. As part of the Modification Agreement, Debtor agreed that "the Loan Documents as modified by this Modification Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed."

5. On December 26, 2018, Debtor filed a second voluntary petition for relief under chapter 13 of the Bankruptcy Code, *pro se*. On that same date, the Court issued a

notice setting March 6, 2019 as the deadline for filing proofs of claim. In the initial Schedules filed simultaneously with the petition, Debtor listed "WSFS/Christiana Trust, Trustee for CSMC 2018-RPL6 Trust" as the holder of a secured claim in the amount of $288,872.61. The claim is listed as disputed.[2]

6. On February 27, 2019, Wilmington SFS, through its servicer, NewRez LLC DBA Shellpoint Mortgage Servicing, filed its proof of claim ("Proof of Claim") asserting a secured claim in the amount of $358,536.24, secured by the Property. Page one of the Official Form 410, Proof of Claim, lists Wilmington SFS as the current creditor, but lists no "Other names the creditor used with the debtor" and states that the claim was not acquired from anyone else. Wilmington SFS attached the following documents to its proof of claim:

    a. Mortgage Proof of Claim Attachment, Official Form 410A, which lists Wilmington SFS as "Creditor" and NewRez LLC DBA Shellpoint Mortgage Servicing as "Servicer." The total debt is listed as $358,536.24 and the total prepetition arrearage is listed as $0.

    b. Annual Escrow Account Disclosure Statement, which appears to have been prepared by Shellpoint Mortgage Servicing.

    c. Mortgage from Debtor and Tracy L. Field to E*Trade Mortgage Corporation, dated October 7, 2005 and recorded October 13, 2005.

---

[2] Debtor subsequently amended his Schedules fourteen times. In the most recent amended version of the Schedules, filed on April 11, 2019, Debtor listed WSFS dba Christiana Trust, Trustee for CSMC 2018 RPL-6 Trust as a nonpriority unsecured claim in the amount of $0, which Debtor indicated was a disputed claim. On Official Form 106Sum, "Summary of Your Assets and Liabilities and Certain Statistical Information," Debtor listed only $1,557.26 in liabilities owed to creditors who have claims secured by property.

    d. Second Home Rider indicating the agreement of Debtor and Tracy L. Field to occupy and only use the Property as a second home.

    e. Note, dated October 7, 2005, in the amount of $359,000, executed by Debtor and Tracy L. Field to E*Trade Mortgage Corporation. No endorsements were shown on the Note.

    f. Home Affordable Modification Agreement, dated August 11, 2014, between Debtor and Tracy L. Field and CitiMortgage, Inc. regarding the Mortgage and Note originally executed on October 7, 2005.

    g. Document entitled "Collateral Assignments File Location R-SLDPLT" dated June 17, 2014, indicating Borrower Name of Rex Field.

    h. Assignment of Mortgage from MERS as nominee for E*Trade Mortgage Corporation to CitiMortgage, dated October 20, 2010, recorded November 22, 2010, regarding the mortgage originally executed by Debtor and Tracy L. Field on October 7, 2005 regarding the Property.

    i. Proof of Service of the Proof of Claim and attached documents on Debtor, the Chapter 13 Trustee and the Court, dated February 26, 2019.

7. No other creditors filed a proof of claim in this case.

8. On March 8, 2019, Debtor filed the Objection to Claim of Wilmington SFS.

9. On April 16, 2019, Wilmington SFS filed a Response to the Objection to Claim.

10. On May 16, 2019, Wilmington SFS filed an amended proof of claim. In addition to the documents attached to the original proof of claim, the amended proof of claim included a copy of the Note executed by Debtor and Ms. Field to E*Trade Mortgage Corporation with two additional pages: a page containing an undated stamped endorsement from E*Trade Mortgage Corporation to CitiMortgage, Inc. and an undated "Allonge to Note" with an endorsement in blank from CitiMortgage, Inc. The amount and nature of the claim as secured was not changed by the amendment.

11. On June 5, 2019, the Court conducted a hearing on the Debtor's Objection to Claim. In addition to the proof offered by each party, at the hearing, Wilmington SFS made an oral motion to allow the May 16, 2019 amendment of its proof of claim and to amend its claim to conform to the evidence presented during the hearing, which included the following documents:

    a. Certified True Copy of the Mortgage, dated October 7, 2005 and recorded October 13, 2005.

    b. The original note with undated endorsement from E*Trade Mortgage Corporation to CitiMortgage, Inc. and undated endorsement in blank from CitiMortgage, Inc.

    c. Certified True Copy of Assignment of Mortgage recorded November 22, 2010, from MERS as nominee for E*Trade Mortgage Corporation to CitiMortgage, Inc.

    d. Certified True Copy of Assignment of Mortgage recorded August 10, 2016, from CitiMortgage, Inc. to Nationstar Mortgage LLC.

  e. Certified True Copy of Assignment of Mortgage recorded December 18, 2018, from Nationstar Mortgage LLC to Wilmington SFS.

  f. Payoff statement, dated May 21, 2019, from Shellpoint Mortgage Servicing, indicating that the total payoff as of May 21, 2019 is $361,141.18.

  g. Loan History Summary dated May 21, 2019 from NewRez LLC DBA Shellpoint Mortgage Servicing.

  h. Annual Escrow Account Disclosure Statement

## CONCLUSIONS OF LAW

Debtor seeks disallowance of Wilmington SFS's claim under 11 U.S.C. § 502(b) on several grounds: (1) Wilmington SFS failed to serve its Proof of Claim; (2) Wilmington SFS did not timely file its amended proof of claim within the 120-day period set forth in Fed. R. Bankr. P. 3002(c)(7); (3) Wilmington SFS failed to file adequate supporting documentation to its Proof of Claim in compliance with Fed. R. Bankr. P. 3001(c); (4) the Proof of Claim fails to demonstrate that Wilmington SFS has a perfected security interest in the Debtor's Property; and (5) Wilmington SFS did not have standing to file the proof of claim.[3] Wilmington SFS made an oral motion to allow the May 16, 2019 amendment of its Proof of Claim and allow amendment of its Proof of Claim to

---

[3] From the outset, it has been apparent to the Court that Debtor's Objection to Claim has been fundamentally about avoiding the lien of Wilmington SFS, although this was not articulated in the Objection. Debtor disputed the debt in his schedules in this case and in his prior bankruptcy case, and when he initially filed this case, he listed only Wilmington SFS and its servicer, Shellpoint Mortgage Servicing, as creditors. He also attached an Addendum to Schedule D stating that "CSMC 2019 RPL6 Trust is not a creditor relating to me or my property, as such, I do not owe them any money" and "I hereby deny and dispute the validity of their pseudo debt, the validity of any claims that they may have, and any security interest and/or lien that they may claim to have or claim in the future." After discussion with the Court during the hearing on the Objection to Claim, Debtor indicated that he would be filing an adversary proceeding to dispute the validity of Wilmington SFS's lien, which he has now done, and thereafter did not present further evidence in support of his Objection to Claim.

conform to the evidence presented at the hearing, which it asserts includes the necessary documentation to meet the requirements of Fed. R. Bankr. P. 3001.

During the hearing, the Court announced on the record that it was denying relief to Debtor based upon the allegation that Wilmington SFS failed to serve its Proof of Claim, finding that proof of service was attached to the Proof of Claim, Debtor failed to overcome the presumption that Wilmington had served the Proof of Claim as evidenced by the proof of service, and that there is no express requirement in the Federal Rules of Bankruptcy Procedure obligating Wilmington SFS to serve its Proof of Claim upon Debtor. The remaining grounds for relief were taken under advisement.

*I.    11 U.S.C. § 502*

The allowance and disallowance of claims in a bankruptcy case is governed by 11 U.S.C. § 502. Section 502(a) provides that a proof of claim is deemed allowed unless an objection is filed. 11 U.S.C. § 502(a). If an objection to claim is made, the Court, after notice and a hearing, shall determine the amount of the claim as of the date of the petition, and shall allow such claim in that amount, unless the claim is disallowed under one of the exceptions listed in the Bankruptcy Code. 11 U.S.C. § 502(b). "A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). If there is a presumption of validity and amount of the claim, the debtor would bear the initial burden of presenting evidence sufficient to overcome the *prima facie* presumption. *In re Washington,* C/A No. 16-02667-JW, slip op. at 7 (Bankr. D.S.C. Mar. 24, 2017) (citing *In re Harford Sands, Inc.*, 372 F.3d 637, 640 (4th Cir. 2004)). If there is no presumption of validity and amount, the claimant bears the initial burden of proving its claim.

7

## II. Timeliness under Fed. R. Bankr. P. 3002

Debtor first argues that Wilmington SFS's claim should be disallowed under 11 U.S.C. § 502(b)(9) as untimely under Fed. R. Bankr. P. 3002(c)(7). Rule 3002 was amended in 2017 "to clarify that a creditor, including a secured creditor, must file a proof of claim in order to have an allowed claim" and to provide specific deadlines applicable to a creditor whose claim is secured by a security interest in the debtor's principal residence.[4] *See* Fed. R. Bankr. P. 3002(a). As a result of the 2017 amendment, secured creditors must first meet the 70-day claims bar date provided in Rule 3002(c) if they wish to participate in Chapter 13 plan distributions.[5] Fed R. Bankr. P. 3002(c)(7)(A) ("A proof of claim filed by the holder of a claim that is secured by a security interest in the debtor's principal residence is timely filed if: (A) the proof of claim, together with the attachments required by Rule 3001(c)(2)(C), is filed not later than 70 days after the order for relief is entered…."). However, Rule 3002(c)(7)(B) provides an additional period of 50 days to a creditor who is secured by a security interest in debtor's principal residence (a total of 120 days after entry of the order for relief) to file any attachments required by Rule 3001(c)(1) and (d), such as copies of recorded mortgages providing evidence of perfection of its security interest. *See* Fed. R. Bankr. P. 3002(c)(7)(B).

---

[4] The amendment also clarified that "a lien that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim." Fed. R. Bankr. P. 3002(a).

[5] The 2017 amendment to Rule 3002(c)(7) encourages mortgage creditors to quickly file an initial proof of claim with sufficient information regarding the amount of the debt and payment terms to allow the debtor to create a repayment plan, but recognizes that more time may be needed to obtain supporting documentation, such as notes, endorsements and mortgages, due to the frequent transfers of negotiable instruments in the home mortgage industry. Therefore, such creditors are allowed an additional 50 days to supplement their proofs of claim with those supporting documents. *See Report of the Advisory Committee on Bankruptcy Rules to Standing Committee on Rules of Practice and Procedure,* May 8, 2013, p. 20, *available at* https://www.uscourts.gov/rules-policies/archives/committee-reports/advisory-committee-rules-bankruptcy-procedure-may-2013 ("In response to concerns raised…, the amended rule would also include a longer bar date for certain supporting documents required for mortgage claims on a debtor's principal residence.")

Wilmington SFS's initial Proof of Claim was filed within the 70-day deadline for creditors to file proofs of claim and includes attachments required by Fed. R. Bankr. P. 3001(c)(2)(C), 3001(c)(1), and 3001(d), thus making the claim timely. First, there is no dispute that Wilmington SFS attached the Mortgage Proof of Claim attachment, Official Form 410A, and escrow account statement in compliance with Fed. R. Bankr. P. 3001(c)(2)(C). Wilmington SFS also attached to its Proof of Claim copies of the Note, Mortgage, and Home Affordable Modification Agreement, which constitute the writings upon which the Proof of Claim is based, in compliance with Rule 3001(c)(1). *See* Rule 3001(c)(1) (providing that "when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.") In addition, the copy of the recorded Mortgage attached to Wilmington SFS's Proof of Claim serves as evidence of perfection of a security interest in Debtor's Property in compliance with Rule 3001(d). *See* Fed. R. Bankr. P. 3001(d) (providing that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected."); *see also* Fed. R. Bankr. P. 3001 advisory committee's note (stating that "'[s]atisfactory evidence' of perfection, which is to accompany the proof of claim, would include a duplicate of an instrument filed or recorded"). Wilmington SFS's attachment of copies of the originally signed Note and recorded Mortgage meet the requirements expressed by the plain language of the referenced rule sections and provides Debtor with clear notice of the obligation being asserted in the Proof of Claim. While Debtor appears to raise issues regarding Wilmington SFS's standing to file the Proof of

Claim and a requirement that documents reflecting all note transfers and mortgage assignments be attached to the Claim, these are not required by Rule 3002(c)(7) for a claim to be deemed timely filed. Since the Court finds that all of the attachments required by Rules 3001(c)(2)(C), 3001(c)(1) and 3001(d) were filed within the 70-day deadline,[6] it is unnecessary to consider the 120-day deadline of Rule 3002(c)(7)(B) or presently consider whether Wilmington SFS should be allowed to amend its Proof of Claim after the 120-day deadline.[7] Accordingly, the Court overrules Debtor's Objection to Claim on the grounds that the claim was untimely under 11 U.S.C. § 502(b)(9).

### III.    *Adequacy of Documentation – Fed. R. Bankr. P. 3001*

The thrust of Debtor's argument is that Wilmington SFS's claim does not meet the requirements of Fed. R. Bankr. P. 3001 because none of the supporting documentation attached to the original Proof of Claim referenced Wilmington SFS, there is no documentation attached showing that the Note was properly transferred to Wilmington SFS, and there was no attached assignment of the Mortgage to Wilmington SFS. Furthermore, page one of the Official Form 410, Proof of Claim, lists Wilmington SFS as the current creditor, but lists no "Other names the creditor used with the debtor" and indicates that the claim was not acquired from anyone else.

At the outset, the Court observes that a claimant's failure to comply with the requirements of Rule 3001 in this manner is not a ground for disallowance of that claim under 11 U.S.C. § 502(b); it merely deprives the claim of *prima facie* evidence of validity

---

[6] Wilmington SFS's failure to properly complete the Official Proof of Claim form by listing "Other names the creditor used with the debtor" and indicating that the claim was acquired from another entity may fail to meet the requirements of Rule 3001(a), but this subsection of Rule 3001 is not referenced in Rule 3002(c)(7). While the omission of this information on the Proof of Claim form may affect the *prima facie* validity of Wilmington SFS's claim, it does not make the claim untimely under Rule 3002(c)(7).

[7] If the Court were to consider the motion to amend, it would be granted due to the lack of delay or prejudice to Debtor.

and amount under Rule 3001(f).[8] *In re Devey*, 590 B.R. 706, 721 (Bankr. D.S.C. 2018); *see also In re Jenkins,* C/A No. 18-02463-JW, slip op. at 6 (Bankr. D.S.C. Sept. 18, 2018) (holding that failure to attach documentation is not an enumerated ground for disallowance under § 502(b), therefore a claim cannot be disallowed based solely on the claimant's failure to attach documentation required by Rule 3001). In that instance, in the face of an objection to its claim under 11 U.S.C. § 502(a) by a debtor or other party in interest, a creditor may prove its claim by presenting evidence at a hearing. *See* 11 U.S.C. § 502(b) (if such objection to claim is made, the court, after notice and a hearing, shall determine the amount of such claim… and shall allow such claim in such amount).

In this case, Wilmington SFS filed its Proof of Claim using Official Form 410, thus complying with Rule 3001(a). *See* Fed. R. Bankr. P. 3001(a) (providing that "[a] proof of claim shall conform substantially to the appropriate Official Form.") The Proof of Claim was executed by Latoya Tatum on behalf of New Rez LLC DBA Shellpoint Mortgage Servicing, as the authorized agent for Wilmington SFS, in compliance with Rule 3001(b). *See* Fed. R. Bankr. P. 3001(b) (providing that a proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rules 3004 and 3005); *see also In re McFadden,* 471 B.R. 136, 176 (Bankr. D.S.C. 2012) (holding that mortgage servicers may file proofs of claim on the owner's behalf in bankruptcy court). In addition, Debtor listed Wilmington SFS as a known secured

---

[8] Debtor argued at the hearing that Wilmington SFS's failure to attach adequate documentation supported relief under Fed. R. Bankr. P. 3001(c)(2)(D), which provides that upon a creditor's failure to provide any information required by Rule 3001(c), the Court may, after notice and a hearing, take either or both of the following actions: (1) preclude the holder from presenting the omitted information in any contested matter or adversary proceeding, unless the court determines that the failure was substantially justified or is harmless; or (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure. At the hearing, the Court made an oral ruling denying relief under Rule 3001(c)(2)(D), finding that such relief was discretionary, and allowed Wilmington SFS the opportunity to present evidence to prove its claim.

creditor, although disputing its claim, in his initial schedules which were filed prior to the filing of the Proof of Claim by Wilmington SFS. No other creditor has filed a proof of claim asserting a mortgage on the property. As stated above, Wilmington's initial Proof of Claim satisfied Rule 3001(c) and (d).

Debtor argues that the initial Proof of Claim is deficient because Wilmington SFS failed to attach evidence of the transfer of the note and recorded chain of assignments showing the transfer of the mortgage to Wilmington SFS. While it could be helpful to attach these documents, the Court finds this is not an express requirement under Rule 3001.[9] Related to this argument, Debtor further asserts that page one of the Official Form 410, Proof of Claim, is misleading because it lists Wilmington SFS as the current creditor, but lists no "Other names the creditor used with the debtor" and fails to indicate that the claim was acquired from anyone else. While it could be argued that this is a minor error and the missing information can be readily ascertained by reviewing the attached Note, Mortgage, Modification Agreement and Assignment, which provide the names of the original creditor and other creditors preceding Wilmington SFS, and Official Form 410A, which names Wilmington SFS as creditor and NewRez LLC DBA

---

[9] The subsection of Rule 3001 addressing transferred claims requires a transferee of a claim to attach evidence of the transfer if the transfer occurred after a proof of claim was filed, but imposes no such requirement where the transfer occurred prior to the filing of the proof of claim. *Compare* Fed. R. Bankr. P. 3001(e)(1) (providing that claims transferred other than for security before proof of the claim has been filed may be filed only by the transferee and providing no requirement for evidence of the transfer to be filed) with Fed. R. Bankr. P. 3001(e)(2) (providing that evidence of the transfer shall be filed by the transferee for claims transferred other than for security after the proof of claim has been filed); *see also* Fed. R. Bankr. P. 3001(e) advisory committee note ("If a claim has been transferred prior to the filing of a proof of claim, there is no need to state the consideration for the transfer or to submit other evidence of the transfer.") In addition, the instructions provided on Official Form 410, require the creditor to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements." Official Bankruptcy Form B410 (emphasis added). In addition, the instructions provide that copies of *any* documents that support the claim should be attached, not *all* documents, and assignments is not listed at all. Considering the threat of criminal prosecution for fraudulent claims, the signature of Wilmington SFS's authorized agent on the Proof of Claim lends further support that it is the holder/owner of the Note and Mortgage it attached to its proof of claim for purposes of Rule 3001.

Shellpoint Mortgage Servicing as servicer, complete and accurate responses to the information requests on the Official Proof of Claim form are essential to the efficient administration of claims in bankruptcy cases. Therefore, under the circumstances of this case, the Court agrees and finds that this oversight by Wilmington SFS may deprive the claim of its *prima facie* validity because it fails to substantially comply with the Official Form under Rule 3001(a).  If Wilmington SFS's claim is not *prima facie* valid due to this deficiency, it is nevertheless entitled to prove its claim by presenting evidence demonstrating that it is entitled to enforce the Note at the hearing.  *See In re Leverett,* 378 B.R. 793, 800 (Bankr. E.D. Tex. 2007) ("[W]hen a claimant fails to comply with Bankruptcy Rule 3001 and Official Form 10 by including all of the required information, the claimant cannot, in response to an objection, rest on its proof of claim and must come forward with sufficient evidence of the claim's validity and amount.").

### IV.    *Hearing on Debtor's Objection to Claim*

To the extent Wilmington SFS's claim was not *prima facie* valid, the Court required Wilmington SFS to present evidence at the hearing to prove its claim.

Under South Carolina law, the holder of a negotiable instrument, including a promissory note, has the right to enforce it. *See* S.C. Code Ann. § 36-3-301.[10]  "Holder"

---

[10]    The version of S.C. Code Ann. § 36-3-301 in effect in 2005 (at the time of the execution of the note) provided: "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in § 36-3-603 on payment or satisfaction, discharge it or enforce payment in his own name." The version of § 36-3-301 in effect at the time of the modification in 2014 provides:
> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 36-3-309 or 36-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

The parties did not present argument regarding which version would apply, and it is unnecessary to decide this issue as either version supports Wilmington SFS's rights to enforce the note by filing a proof of claim in this case.

13

means "a person who is in possession of a document of title or an instrument or a certificated investment security drawn, issued, or indorsed to him or to his order or to bearer or in blank." S.C. Code Ann. § 36-1-201 (20) (2005).[11] Furthermore, under South Carolina law, an assignment of a mortgage does not appear to be a prerequisite to enforcement of the debt secured by a mortgage in a collection or foreclosure proceeding. A creditor may rely on its status as a holder in possession of the note to enforce either the note or the mortgage.[12] *Schneider v. Deutsche Bank. Nat. Trust Co.,* 572 Fed. Appx. 185, 189 (4th Cir. 2014) ("South Carolina has long upheld the familiar and uncontroverted proposition that the assignment of a note secured by a mortgage carries with it an assignment of the mortgage, but that the assignment of the mortgage alone does not carry with it an assignment of the note.") (citing *Hahn v. Smith*, 154 S.E. 112, 115 (S.C. 1930)); *Ballou v.* Young, 20 S.E. 84, 85 (S.C. 1894) ("The transfer of the note carries with it a mortgage given to secure payment of such note."); *U.S. Bank Trust Nat'l Ass'n v. Bell*, 684 S.E.2d 199, 204 (S.C. Ct. App. 2009) (finding that a mortgage and a note are separate securities for the same debt, and a mortgagee who has a note and a mortgage to secure a debt has the option to either bring an action on the note or to pursue a

---

[11] Wilmington SFS, as the person in possession of the note endorsed in blank, is a "holder" under either the 2005 or 2014 version of S.C. Code. Ann. § 36-1-201. The 2005 version of § 36-1-201 is cited because the note was executed in 2005. The current version of § 36-1-201(21) (and version in effect at the time of the modification in 2014) defines "holder" as:
    A) the person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession;
    (B) the person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or
    (C) the person in control of a negotiable electronic document of title.
Section 36-1-201 (5) defines "bearer" as:
    "Bearer" means a person in control of a negotiable electronic document of title or a person in possession of a negotiable instrument, a negotiable tangible document of title, or certificated security that is payable to bearer or indorsed in blank.

[12] "A holder is a person in possession of an instrument drawn, issued, transferred, or indorsed to him." *Bank of America, N.A. v. Draper,* 746 S.E.2d 478, 482 (S.C. Ct. App. 2013).

14

foreclosure action). In some instances, an entity may be entitled to enforce a note as a nonholder in possession of the instrument but would not have an assignment of the mortgage into its name since it is not the holder.  *See* S.C. Code Ann. § 36-3-301 (defining the "Person entitled to enforce" an instrument as including (i) a holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder) or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 36-3-309 or 36-3-418(d)); *see also Bank of America, N.A. v. Draper*, 746 S.E.2d 478, 482 (S.C. Ct. App. 2013) (holding that a servicer of a loan is a real party in interest and able to initiate a foreclosure action).

At the hearing on Debtor's Objection to Claim, Wilmington SFS presented sufficient documents into evidence to establish the validity and amount of the claim and its standing to assert it, including the original Note with proper endorsements, a certified copy of the Mortgage, and the chain of mortgage assignments into Wilmington SFS. Thereupon, the burden shifted to Debtor to rebut the evidence presented by the claimant, but Debtor presented no such evidence and failed to meet his burden.  For purposes of overcoming Debtor's Objection to Claim on the grounds of inadequate documentation attached to the Proof of Claim, the Court finds that the uncontroverted evidence presented by Wilmington SFS was sufficient to establish that Wilmington SFS has a valid claim secured by a perfected security interest in Debtor's Property in the amount asserted.[13]  *See In re Blomberg,* No. 2:13-cv-2187-HRH, 2014 WL 5581047, at *4 (D. Ariz. Oct. 31, 2014 (Overruling the debtor's challenge of creditor's standing to file a proof of claim due to its failure to attach a note which was endorsed in blank because the creditor presented

---

[13] This conclusion is without prejudice to the Court's determination of the validity, priority or extent of Wilmington SFS's lien or other interest in Debtor's property in the adversary proceeding filed by Debtor subsequent to the hearing.

the original endorsed note into evidence at the hearing to establish its claim). Accordingly, the Court overrules Debtor's Objection to Claim on grounds of inadequate documentation and failure to demonstrate a perfected security interest in Debtor's property.

### *V.    Standing*

Debtor finally argues that Wilmington SFS lacks standing to assert a claim, secured or otherwise, against Debtor. Proofs of claim may only be filed in a debtor's bankruptcy case by a real party in interest, which under Fed. R. Bankr. P. 3001(b) is the creditor entitled to payment on a claim or its authorized agent. In the case of a mortgage proof of claim, the real party in interest is "the party entitled to enforce the note and its accompanying mortgage." *In re Smoak,* 461 B.R. 510, 517 (Bankr. S.D. Ohio 2011). State law governs the enforcement of promissory notes, specifically South Carolina's Uniform Commercial Code. As stated above, the evidence presented at the hearing was sufficient to establish Wilmington SFS's standing to assert a claim against Debtor. By presenting the original note into evidence at the hearing, Wilmington SFS demonstrated that it has possession of the original note, endorsed in blank, signed by Debtor. Therefore, it is a "holder" of the note pursuant to S.C. Code Ann. § 36-1-201(20) and is entitled to enforce the note pursuant to § 36-3-301. To further support this claim, Wilmington SFS also presented into evidence a certified copy of the mortgage and the complete chain of recorded assignments from the original lender to Wilmington SFS.

Debtor's argument that Wilmington SFS lacks standing because it failed to prove that it was the Trustee of Christiana Trust or that the Trust exists is likewise without merit. "While a debtor has the right to challenge whether the creditor filing a proof of

16

claim is the holder of the note, a debtor generally lacks standing to challenge who the owner of the note is because it does not impact who is entitled to enforce the note and who may file the proof of claim." *In re Simmerman,* 463 B.R. 47, 60 (Bankr. S.D. Ohio 2011) (citing *In re Smoak,* 461 B.R. at 518)). Accordingly, Debtor's Objection on the grounds that Wilmington SFS lacks standing to assert a claim against Debtor is overruled.

## CONCLUSION

Based on the foregoing, Debtor's Objection to Claim is overruled, and Wilmington SFS's claim is allowed as a secured claim in the amount of $358,536.24.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**08/08/2019**



US Bankruptcy Judge
District of South Carolina

Entered: 08/08/2019